Castillo v Bikvan (2026 NY Slip Op 00191)

Castillo v Bikvan

2026 NY Slip Op 00191

Decided on January 15, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 15, 2026

Before: Manzanet-Daniels, J.P., Moulton, Gesmer, Rosado, Hagler, JJ.

Index No. 814718/22|Appeal No. 5251|Case No. 2025-02826|

[*1]Evelyn Castillo, etc., Plaintiff-Respondent,
vSvetlana Bikvan, MD, et al., Defendants-Appellants.

Shaub, Ahmuty, Citrin & Spratt LLP, Lake Success (Nicholas Tam of counsel), for appellants.
Law Office of J. Bacher, PLLC, New York (James W. Bacher of counsel), for respondent.

Order, Supreme Court, Bronx County (Michael A. Frishman, J.), entered on or about April 11, 2025, which denied defendants' motion for summary judgment dismissing the complaint, unanimously affirmed, without costs. At approximately 1:10 am on August 2, 2022, plaintiff mother took her then-10-year-old daughter to the emergency department at defendant Bronx-Lebanon Hospital Center due to her complaints of abdominal pain. The parties disagree whether the mother, a Spanish speaker with limited English language proficiency, told hospital staff that the pain emanated from the child's pelvic area. The child was first examined by a registered nurse, who noted in the chart that the onset of the pain had begun five days earlier. The mother denies imparting this history to the nurse, and states that her daughter first noted pain on August 1, the day before. As discussed below, the nature and initial onset of pain, and what was said during the emergency department visit about the nature and initial onset of pain, are issues that are hotly contested by the parties, and facts that are critical in determining the appropriate standard of care that defendants were required to provide.
The child was then examined in the emergency department by defendant Svetlana Bikvan, M.D., who noted that the child had an elevated pulse, and that her symptoms included abdominal pain and vomiting. The child vomited twice and defecated once during the emergency department visit. Dr. Bikvan ordered an x-ray and urinanalysis, which both yielded normal results, but no other tests or imaging was conducted. Based on the child's symptoms Dr. Bikvan suspected acute gastroenteritis. The child was discharged at 4:19 that morning. The parties' differ concerning the discharge instructions given to the mother. The hospital contends that it gave the mother written discharge instructions in Spanish, which included information on diet, a Zofran prescription for nausea, and directions to hydrate. Defendants contend that Dr. Bikvan also told the mother to follow up with the child's pediatrician if the pain persisted. The mother's testimony was less clear concerning what she understood she should do if the child continued to experience pain. The hospital chart notes that the mother was the patient's "significant other" who received information from hospital staff. The chart states that the mother's preferred spoken and written language for discussing health care was Spanish. In her affidavit in opposition to defendants' motion, the mother contends, as translated from Spanish, that she is a native Spanish speaker who cannot "read, write, or speak English," but who can understand "a small amount of English when it is spoken very slowly." She states that it was thus difficult to communicate with the doctor and hospital staff. Notably, the parties do not contest that at no time did defendants attempt to secure a Spanish language interpreter to facilitate discussions with the mother, despite the fact that defendants' records demonstrate that they were well aware of her limited proficiency in English. Additionally, the child suffers from selective mutism which can impede her ability to communicate with strangers and it is unclear from the record whether she was able to verbalize information that might have been pertinent to her diagnosis and care. The mother testified at her deposition that during the day following her discharge from Bronx-Lebanon Hospital Center, the child's pain progressively worsened. She took the child to see her pediatrician, Jonathan Hoenig, M.D., on August 3, the next day. Dr. Hoenig conducted an exam with a Spanish interpreter present and noted, among other things, that the child's lower right and left abdomen were soft and tender, and that these areas hurt when the child jumped. Based on this examination Dr. Hoenig directed the mother to take the child to an emergency room.
Mother and child arrived at Children's Hospital at Montefiore Hospital at 6:45 that evening. The child was initially diagnosed with constipation and dehydration, and an ultrasound was ordered to evaluate for appendicitis. The ultrasound revealed an enlarged left ovary without doppler flow, consistent with ovarian torsion. Late that evening Montefiore performed a left salpingo-oophorectomy, which, in lay terms is the surgical removal of the left ovary and fallopian tube. The operative report indicated that the child's left ovary was necrotic and had torsed four times.
The mother brought this suit on behalf of her daughter and herself. After the parties conducted discovery, defendants moved for summary judgment. Supreme Court denied the motion and defendants now appeal.
Defendants failed to make a prima facie showing of entitlement to summary judgment on the issue of departure. The hotly contested timing of the onset and emanation of the child's pain and other symptoms frustrates our ability to determine what the standard of care should have been, and it is thus unclear from the record before us whether or not defendants departed from it (see Anyie B. v Bronx Lebanon Hosp., 128 AD3d 1, 3 [1st Dept 2015]).
Karen Dias-Martin, M.D., defendant's expert, opined that plaintiff had not demonstrated causation. She opined that the very rapid decline of an ovary deprived of blood flow, with necrosis occurring within a few hours, would mean that any departure in this case could not have caused the loss of the child's left ovary. Dr. Dias-Martin based her opinion on causation in part on the notations in the child's chart indicating that the pain had started to occur in her abdomen three or five days prior to the child's visit to Bronx Lebanon's emergency department in the early hours of August 2. However, there are conflicting accounts of when the child's pain began and the source of the child's pain. The mother testified that the child first mentioned pain only on August 1, and that she conveyed that information to defendants during the emergency department visit. At his deposition, the child's father stated that he had spent the day with the child on August 1 and that she did not express to him that she was experiencing any pain.[FN1]
Even if we found that defendants established their prima facie case, plaintiff submitted an expert affidavit in opposition from Richard Luciani, M.D., a board-certified obstetrician-gynecologist with 44 years of experience, who raised issues of fact concerning whether defendants departed from the standard of care and causation. Specifically, he asserted that defendants failed to adhere to the applicable standard of care for "a pediatric patient presenting with acute lower abdominal pain[, which] would include . . . prompt [ultrasound or CT scan] and . . . a Complete Blood Count (CBC) to assess for conditions such as ovarian torsion and to evaluate or detect the presence or absence of infection or inflammation." Dr. Luciani further opined that had defendants followed this standard of care, the patient's left ovary and fallopian tube could have been saved. That the child's symptoms may have been consistent with constipation or gastroenteritis does not negate Dr. Luciani's assertion that the applicable standard of care required additional testing to rule out other possible causes of her acute abdominal pain and vomiting. Defendants argue that Dr. Luciani is not qualified to render an opinion on adolescent emergency gynecologic care. However, his experience and qualifications are sufficient to opine on the standard of care concerning ovarian torsion in an adolescent; any claimed deficiency in his qualifications goes to the weight, not the admissibility, of his opinion (see Corcino v Filstein, 32 AD3d 201, 202 [1st Dept 2006]).
Dr. Dias-Martin's opinion on the absence of causation, which noted the swift onset of necrosis and irreversible damage to the ovary even if torsion were timely identified, is partially dependent on how long the child had been experiencing symptoms, and whether the defendants accurately understood what symptoms the child was experiencing. However, there are various incongruent descriptions in the medical records and in deposition testimony by the patient and her parents about the onset of the child's symptoms, which could have been within hours, or several days, prior to her being seen in the emergency department. These incongruities raise numerous triable issues of fact. There is also an issue of fact concerning whether defendants' failure to provide the mother with a Spanish interpreter at the hospital contributed to a failure to ascertain the onset and nature of the child's pain.
We have considered defendants' remaining contentions and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 15, 2026

Footnotes

Footnote 1: It is unclear whether Dr. Dias-Martin reviewed the father's deposition. She recites in her affidavit that she reviewed the "parties'" depositions, and the deposition of one nonparty that she identifies namely, as the nurse who did intake in the emergency department on August 2. The father is not a party and Dr. Dias-Martin does not specifically mention reviewing his deposition.